Is it really possible in the United States of America that some religions are second-class religions? And that's clearly what happens here. Gospel Missions, because of the fact that it chooses, as a matter of its core religious beliefs, to go out into the community and onto the street and solicit funds, finds itself in a situation where not only does it have to provide vastly more information to a local government agency than a different religion following the model of large churches under what regulation section do you have to provide additional information? Sorry, I'll take one second, maybe two. Forty four. Oh, one power of the board to publish the results of any investigation. I just need I know the section number, but we sent a remand only for 44.00 B and G. Why would that be included in the remand that we sent to the district court? The question, as I understand it, is whether or not the overbreadth doctrine applies. I don't see how one can discuss whether or not overbreadth applies without looking to see what exactly happens when this ordinance interacts with people in the real world. But your argument is one that relies upon the free exercise and establishment clause. Our overbreadth law essentially says that it's the free speech clause. The Supreme Court's made a couple of other exceptions, but they have never made an exception into the free exercise or the establishment clause. So where does that leave us? What case do you rely on that tells us that we should go contrary to the Supreme Court and extend the overbreadth doctrine into the free speech and establishment clauses? I take that as a good point. I think vagueness would be a better word for me to use. It clearly is not clear what will happen to you if you fall into this category of churches who have to come in front of the city of Los Angeles and provide all this information. It says that you're subject to an investigation. It says that the results of the investigation will be publicized. It says, in essence, that the board will work together with entities that have been declared to be approved or endorsed in order to make the charitable process more efficient. All of these things happen in some vague and nebulous way if you fall into this category. You don't really know what's going to happen to you. But I think the answer to that question is, if we're going to go contrary to the free speech and establishment clause, that may mean not much or it could mean a very great deal. It meant a very great deal years ago when they raided their houses at gunpoint. At several points in the record, for instance, in Ms. Lucas's most recent depositions, she indicates that what they told her in the application is not what she perceives they were doing. Well, you're really arguing what might happen, but that puts you right into U.S. against Salerno, where the Supreme Court is telling us in this overbreath doctrine we're not to conceive of what circumstances might happen. So how can we come to grips with your argument there? How do they know what it is that they can do and what it is that they can't do? They're a church. They're not called upon to hire lawyers in theory in order to ascertain what is allowable and what isn't. And yet when you read the statute, once you get sucked into the process, you need a team of lawyers to even give you a clue as to what it really is that you can and what it is that you can't do. And surely this endorsement power, in the very essence of its vagueness, is just an overwhelming impediment to an unpopular religion should the popular religions decide they all want to get these permits and meet together with the city in order to, as it says, make the process more efficient. What is the making more efficient of religion? I mean, how do you begin to even talk about that? The fundamental question here to me is just is this an issue where there's vastly more entanglement with the religious organization than can be supported under all the case law having to do with religions in the United States. And there just is nothing that stands for the proposition that local governments can meddle to the degree that the city wants to meddle. They want to know everything to the nth degree if they want to know it. And if they don't care because of who you are, they don't need to do that. There's no specific list. There's no look at the 90-page questionnaire I got last time for a RICO case statement that the Court sends out. I mean, there's nothing like that. It's just a few lines. And then it says we'll do whatever else we want to do and good luck. It's just an incredibly imprecise process for regulating core religious activity. And the activity here is traditional core religious activity. There's nothing that could be more core, according to many of the opinions that have been published over the last hundred years on this issue. This is traditional core religious activity. And reading through the statute itself shows that at every level, it's vague. It's not in any way precise, certainly not as precise as the Federal courts call me to be when I have to file a RICO complaint. And I think that might be a good standard. If the government is going to intervene in religion and do it based on the fact that it's either religion or some other purpose protected by the First Amendment. I mean, every category here, whether it's patriotic, benevolent, religious, or whatever, has the highest level of protection of the First Amendment. If this law had to do with people asking people for money on a public street, the debate might be, in my opinion, more difficult. But as it stands, you can ask people on a public street for money for a newspaper, and you don't have to fill out any of these forms. You don't have to be investigated. You don't have to display a card that says whether or not you are endorsed, which I have to say must be the most, to me, heinous part of this is that the government is actually coming to the conclusion, based on this vague process, these vague definitions, whether or not a religion is endorsed or not endorsed. I mean, there's no case law anywhere in any case having to do with regulating religion that says that that can be done. And this is not about a general sort of a law like sales tax or wage an hour. I mean, this is specifically regulating First Amendment protected activities. Kennedy. Kennedy. Well, what was the regulation that was permitted in Cantwell v. Connecticut? I'm probably the only one in this room that can remember the case because I was in high school when it was decided. I've read it. My recollection is that you can be forced to identify yourself. This goes far beyond that. And to establish your bona fides, that you are, in fact, connected with the organization. It did recognize that the free exercise clause permits some, well, I don't know whether to say regulation or limitation, but some burden on the free exercise.  It involves begging for alms. And we don't dispute that the City of Los Angeles could require people to display a totally content-neutral button or sticker or placard that said what their name was and perhaps even have their picture on it. I don't think it would be reasonable for it to include their home address, although the City could know the home address, but people shouldn't have to risk that they would be vilified by somebody who doesn't like what you're saying. So to prove your identity, to prove that you have some association, I understand and agree that the case law supports that notion. But to set up this bureaucracy that conducts reviews of all your financial information, that publicizes the financial information in the format that it chooses to publicize it, that requires you to display in public whether or not you are a government endorsed or not a government endorsed. This expansion is an expansion on the remand. But the City, I think, concedes that their requirement is a de facto license. They seem to be saying that. And so is there a – is it your theory that there is such an entanglement of City bureaucracy in the licensure process that it violates the free exercise? Yeah. I mean, this goes far beyond the very important duty of the government to determine whether or not I'm a safe driver. I mean, this is a constant, every year review, open-ended of all the documents. Nobody asks me to come down every year for my driver's license and have a physical. Nobody wants, you know, I mean, either I lose my license on some sort of a specific system of laws that has to do with penalties for how fast you spend and how many points you got. This is way more open-ended. No one says that if I'm driving my car, I have to display a license plate that says that the county or the City thinks that – or the State thinks that I'm a good driver or a mediocre driver or a bad driver. This is your overbreath argument, as I understand it, correct? No. It's an excessive entanglement and vagueness argument. The whole process is vague. If it was done in a nice, friendly sort of way, that all you had to do was come in, you know, show that you had a checking account, that you weren't just putting the money in your pocket, there was some bookkeeping, you know, maybe this would be okay. But this has been interpreted clearly by the county – the City. That's right, the City. Well, if I understand correctly, we only sent it down for one section. You say the other section comes in under the overbreath argument. So I assume the request for documents, which is not a section we sent it down for, you bring in under your overbreath argument. But I still don't understand. I see how you tie it in to the free speech and the Establishment Clause, but I'm not clear how you tie your overbreath argument under the free speech part of the First Amendment. Or do you? Well, I think that the questions we sent it down for, is this a license? Is it overbroad or vague? Does it violate the Equal Protection Clause? Is it an illegal custom of policy? They concede the first. If the other turn out to be true, I think they have to concede the fourth. Yes, and I followed your argument, and your argument makes sense if you think in terms of impacting freedom of religion, either in the free exercise or the substantive clause. But I don't see how it ties in to the free speech part of the First Amendment. And I'm asking the question, do you try and tie it in to the free speech part of the First Amendment? And if so, how does that work? What's your theory? I believe that it involves free speech, because what happens here is that you have a system that does not regulate a general category of speech devoid of any philosophical intent or meaning, like are you asking people for money. It specifically limits this law's application to either asking people for money for patriotic, for religious, well, in our case, religious, even though the word isn't used, or for, what is it, philanthropic and charitable. So in order for, say, a police officer to observe someone and determine whether or not they need this card, which says whether or not they're good or okay, or if you don't get it, if you're bad, I guess, the police officer has to listen to the person who's attempting to proselytize their religious beliefs in order to determine, well, is this person selling newspapers? Is this person asking for money for a stake to go to Las Vegas where his luck is truly good? That's the free exercise clause. But how do you get into the free speech clause? Well, it's the huge entanglement with the – between the officer or the enforcement person and what the person's talking about. All the case law seems to me to be saying that any time you have the government required to listen at great length or significant length to determine what's being said and then some people are in trouble and some people can go ahead and keep talking, that that requires strict scrutiny and the least restrictive means. Okay. If I understand your argument, the same argument you used under the free exercise clause automatically also applies to the free speech clause. I think that's fair to say. Could I ask you one other question that is troubling to me? We may have overlooked something the first time. I want to make sure. This is on the equal protection issue. When we remanded this to the district court, the district court stated that. But that issue has been waived because it wasn't in the complaint. It was not in the moving papers. And so, therefore, the equal protection clause was never raised and it was waived. Now, if that's true, we probably should not have sent it back down to the district court to talk about it. The district court was kind enough to go ahead and do it. But I want to find out if the district court was correct in its waiver. Is it true, as the district court said, that the equal protection clause was not brought up in the complaint nor in the moving papers? I don't believe that's true, and I'm not at this moment able to point you to the precise point. We've done this type of case all over the country. We've always raised equal protection. I did not look to find the papers. Do you agree with the district court that if it was not brought up in the complaint and the moving papers, it would be waived for purposes of this appeal? I'm not sure that I know the law in that area clearly enough to agree to that or not agree to it, and I can't see any benefit to my agreeing to it. Ordinarily, if it's never brought up in the complaint and not in the moving papers, it's something that's waived and doesn't come up on appeal. And I'm just trying to sort this issue out because, quite obviously, we may have missed something the first time around. I apologize for not recognizing the significance of that issue. And I'm just knowing that for every exception in the law, there seems to be an exception to that exception. I'm not inclined to agree that there's no chance that if you didn't do it, that it shouldn't be considered. I recently had to do a statute of frauds case. Well, maybe your adversary can help us out with that.   Whatever time I have left over, though. Thank you, counsel. The City. Good afternoon. John Werlich on behalf of the City of Los Angeles. I'm with the Los Angeles City Attorney's Office. I think, first of all, I want to thank the Court for the preceding decision because it cleared up a lot of things, I think, as you may recall in the first published decision we had that limited this case, and I think quite correctly, to the issues that are now before the Court. And that has to do with vagueness over breadth of two terms, charitable and charitable solicitation. As was pointed out a minute ago, the District Court did mention that the Equal Protection Clause was not raised in the complaint. And the District Court is absolutely correct. I remember, in fact, we don't have all of this on the record, unfortunately, because I think it's well, I'm not sure if the I don't have it with me. Let's put it that way. But if you peruse the complaint in this case, there is nothing mentioned about equal protection. What about paragraph 16 for the summary judgment? I'm trying to be fair here. I recall the issue came up, and I know I objected at the time. We're talking four or five years ago now when this was first started in the District Court. Oh, yes. That's true, but counsel, it may be four or five years ago, but you've got to be ready for this right now. Well, I understand that. But the Equal Protection Clause, I they brought it up, I think, in like a paragraph, and I objected that they brought it up. I said at that time this was not even stated in the complaint. Well, what about what about paragraph 16 of the complaint where it says that it's a long sentence, but at the end of it, it says the denying plaintiffs are constitutional rights to equal protection due process under the 14th Amendment. That sounds pretty clear to me. That would be in the complaint. That's looks like it's raised. That's probably why I didn't address it in my brief. I may have gone over that, and I apologize for not recalling that. But I. You do not press the issue of waiver. No, I won't press that issue. If the justices read that, I'm not going to press it, obviously. Well, there may be a nuance that I missed in paragraph 16 as well, but it, you know, the words equal protection and 14th Amendment are used. I think the nuance might have been, as the district court had indicated, that they were not addressing it with reference to the definitions of vague and charitable, but only as to another portion of the charitable solicitation law. That's if I recall what the nuance actually is. He was making that distinction. I'm sorry. You're not buying me again. In this limited remand order, the issue was whether or not charitable and solicitation, either separately or read in conjunction, in some fashion constituted a violation of the Equal Protection Clause. Right. I think what Judge Wilson was saying was that equal protection that you raised was not with reference to these sections, but with reference to a different section. Now, I think this may be wrong on that, but it appears that it's my recollection that he said. In either event. I see. The first part of it, I suppose one could make that argument. In one sentence, F and G or B and G are challenged on vague and overbroad. And then the next sentence says, similarly, sections that go through are infirm under the First and Fourteenth Amendment. I think it's the vague reference in the judgment. I see. Okay. Notwithstanding that, I think just going directly to the equal protection argument that I think was just not argued a minute ago, and I think we ought to focus on that for a moment. It is the argument, as I understand it, that Mr. Fassbinder is making regarding equal protection, is that they are a church, a church that essentially cannot afford to go out into the public and solicit funds from, I should say, to solicit from their own members. They're forced, I think is what they're saying, to go out and solicit funds from members of the public. And this exemption, the exemption that he's alluding to actually is contained in 44.12, which exempts from this ordinance solicitation between members of an organization. For example, if you have a church and you're passing the plate, this regulation would not cover that type of a solicitation.  So if you're in an outlodge and they're soliciting money from the members for some tsunami relief, it would not. It's only from members thereof at any time of such solicitation. Precisely. Now, it would not cover that type of a solicitation, absolutely. And what Mr. Fassbinder here is saying is that GMA, because of their others, I might add little evidence on this that was submitted in the district court, but they're saying that we are an organization which cannot, our members are so poor, homeless, et cetera, that we don't essentially pass the plate. We can't because they don't have enough money. Therefore, other organizations that don't have to solicit from members of their own organization, I should say, can solicit. I'm sorry I'm not articulating correctly because I didn't quite understand what he was saying until just to pinpoint the facts. The issue seems to be the nature of solicitation. What's your position as to whether or not that's a suspect classification when it involves the religious issue? It's not a suspect classification, even though it turns out that it may relate to a religious organization. First of all, a religious organization is not a suspect class. The classes that I've seen in reading the materials are gender is one suspect class. Alienage is another suspect class. Race is a suspect class. Some of the cases say that certain classes are not suspect, like mentally retarded. There's a number of cases that were cited in the materials that talked about that. This not being a suspect class, first of all, remember that even before you get to a suspect class, we have to show some kind of disparate treatment, disparate effect. There was no intent by the city, for example, to harm gospel missions or any other organization. This is an exemption, an exemption that is in the law, and there's a very good reason why the exemption is in the law. I think Justice Goodwin mentioned earlier about Cantwell v. Connecticut. And Cantwell v. Connecticut related also to a religious organization. However, just because one is a religious organization doesn't mean that you can't adopt reasonable regulations involved in that. For example, Cantwell v. Connecticut involved the Jehovah Witnesses who were trying to canvass and sell their particular products in the community. The court said, no, you can't require someone to get a permit to sell religious pamphlets and the like. Some of the language, however, that was in Cantwell v. Connecticut is very telling. For example, the court states 310 at 305, the general regulation in the public interest of solicitation which does not involve any religious test and does not unreasonably obstruct or delay the collection of funds is not open to any constitutional objection, even though the collection be for religious purpose. Such regulation would not constitute a prohibited previous restraint on the free exercise of religion or interpose an admissible obstacle to this exercise. Now, the importance of that is that I think it's part and parcel to say it's not a suspect class in this case or in any other case. And therefore, the test to be determined in an equal protection case is rational basis. And the question then becomes is did the city have essentially, when you get right down to it, a good enough reason to include that particular exemption, assuming it does have some disparate impact, which I can't concede because I don't know the facts. I have no facts that are on the record. The purpose that the city, as in Cantwell v. Texas, I don't know why I keep saying Texas, Connecticut, says in other cases its progeny say that a government, a city can go out and they can adopt regulations to protect members of the public from whom? From people who solicit charitable and religious funds. And why can they do that? Because their experience found that there was fraud, misrepresentation, things like that. That's what Cantwell says. That's what Cantwell says. This exercise of religion may have some slight inconvenience in order that the State may protect its citizens from injury. Precisely. That's what I'm talking about. Fraud. That's where you hang your hat. That's where I'm hanging my hat. Not a suspect classification. It's not a suspect class. And the – remember the purpose. We have to justify the purpose of our regulation, even under the rational basis test. Yeah. But you want to be in the rational basis test for defending this appeal. Well, naturally. Yeah. What's your argument is that the nature of the solicitation, religion, a religion or religions are not a suspect class, and therefore you get to whether or not there's a rational rated legitimate State interest under the rational basis test. That's right. And in this instance, there was a reason for the whole reason there's a problem, assuming there's some kind of a problem, and that is because of the exemption. The exemption effectively creates two different categories. But the exemption itself is consistent with Cantwell, because Cantwell says protect yourself from strangers in the public. In this instance, the Elks Club, a church, or any other kind of private organization that is soliciting funds from its own members would not be protecting – would not be protecting members of the public. And so consequently, if the city were to have legislation like that, I think Mr. Fassbinder here would be saying you're overbroad. Now you're trying. You really are entangling yourself in religious activities. So it's a good segue for you to talk about the overbreadth and vagueness arguments. The – this – my view of this case is this is a quintessential ordinance which very clearly spells out what charitable is. It has – both the district court and our briefs very clearly went into definitions of charitable. And, for example, there was – one block's law dictionary clearly indicated that the charitable within the subset of charitable includes religious. Soliciting for a religious purpose is soliciting for a charitable purpose. Now we can go on and we can talk about – I don't think we're worried about that kind of a definition. It seems to me that the overbreadth point is – goes to the discretionary enforcement of whoever the people are that administer the ordinance. Usually it's a cop on the street. Now when I walk to work in San Francisco, I go through the Tenderloin and it's running a gauntlet of solicitors who are – I'd call them subsistence solicitors. They're soliciting to stay alive. They don't claim any religion or charitable purpose other than keeping themselves alive. Now the city regulates them slightly by rousting them every once in a while. When a cop with a stick comes down the line and says move along or something. But what you're dealing with here with this ordinance seems to me raises a question of where do you draw the line between the city's right to reasonable time, place and manner regulation of solicitation of non-members. Keeping aside the soliciting of your own membership, no government has a right to interfere with that. But soliciting non-members under Cantwell, if the city has a right to put some burden on it, where do you draw the line and how much of a burden? A ten-page questionnaire or a one-page ID card application? Now if you want us to write an opinion, we have to have some input from both sides as to where you think the line ought to be drawn. Well, first of all, I think the court was on the right track in the preceding decision issued in May of 2003 where it limited this case to charitable and solicitation. Those two sections. When we start talking about, and I understand your question, where do you draw the line is, for example, requiring that the results of an activity after a year's soliciting which is required by the city in another section of the ordinance, that's not under review by this court. Many of those sections, as you may recall, that we've gone to for the last few years were this court stated that the plaintiffs in this case could not bring them up for issue preclusion and claim preclusion reasons for the most part. Some of the sections that you're alluding to, accounting procedures, requiring certain information, those are sections which this court has already stated we will not review. We are not reviewing those sections. Having said that, the type of information that is requested is frankly innocuous at best, and it's very similar to the kind of information that is, that was requested in two types of cases involving the City of Flag case and another one out of Texas and a simpler one that talked in terms of where it was upheld. The ordinance was actually upheld. And you may recall that when then-Judge Kim Wardlaw in 1997 issued a decision upholding a substantial portion of those kinds of questions already, we've already resolved those, most of those kinds of questions. That's why we're left with only these few questions regarding, you know, the question of vagueness is usually in a case where, like Your Honor just mentioned, that a police officer doesn't, that it's so vague that it can be, they have discretion, a massive amount of discretion to enforce it. Here there's no discretion. There are definite limits to the types of activity and type of conduct that is covered by this, by this ordinance in charitable. I might add that I think that Mr. Fassbinder in the Gospel Missions complaint is they, in their brief, concede that the term includes religion. Their concern is that it does conclude religion. They say because it includes religion and religion is a protected class, they somehow feel that, frankly, that they're above all other organizations. And just as we read out of Campwell v. Connecticut, we know that that's not the case. This is a very reasonable ordinance. It's a ministerial type ordinance. There's no discretion whatsoever in the people who implement it. Either it is charitable or it is not charitable. The definitions are, frankly, they're very clear cut. It is not like you have, and I think in some of the cases where an approved religion or those are the kinds of cases, an approved charitable organization where indeed there was where indeed there was a great deal of discretion that was left to the governmental entities to decide whether what they would or would not license was a good religion or a good charitable organization. This is not the same thing here. We've decided what defined what charitable is. And we stick with as far as over breadth. As the court. But before you leave that point, I mean, I think what you said earlier, if I understood you, is that it was well understood if one went to Black's Law Dictionary and the definitions given in the district court. But those aren't in the ordinance. Those are the glosses given by judicial interpretation, right? Did I misunderstand your point? I may have misunderstood your question. I apologize. No, I mean, earlier you were talking about how you're if I understood your statement correctly, that you thought that the definition of charitable was well defined. And then you referenced Black's Law Dictionary. So that's not in that. That's not in the ordinance, is it? Well, it's not in the ordinance. But remember, the whole purpose of vagueness and we test what vagueness is. The question is whether or not it gives a normal person on the street an understanding of what they're supposed to do. Yes. That was my point, is that you have to reference Black's Law Dictionary in order to at least that's what I took your point to. We don't have to reference. I think we do it just to try to illustrate a point. I think if we you know, now is tax time. By the 15th, we're all going to file tax forms. And under that section of I think it's. Yes. But they don't they don't define it that way. They define a lot more specifically. Well, I think the point is, is that what does the normal person on the street think of charitable be? And if they go to the ordinance and look at it, and if they look in a dictionary to find out what charitable means, I think they get the point that it includes activities that are charitable. And I think most people think that religious organizations have a thread, certainly of charitability in their hearts and in their churches and so forth. But in this case, remember that Gospel Missions of America, when they are soliciting, they're soliciting for the homeless. They put a sign out and says this says money. We need a solicitation for the homeless. They're not soliciting for my church in any event. I see my little time is up. Any concluding remarks you want to make? I just want to say I don't think you can get a more pristine, a more clear ordinance that has less ministerial requirements of someone to implement it. If if if you do. And even if this ordinance for a moment, if I may back up, let's say it doesn't include religion. Let's just say that the Court says it doesn't include religious activities or the like. That doesn't make it unconstitutional. That just makes it the statutory definition of it doesn't include religion. But we have California Supreme Court decisions all the way back since 1916 defining almost using charitable and religion synonymously. Thank you, counsel. Thank you. Rebuttal. Thank you for finding Paragraph 16. I have found back up. How do you respond to the argument that this seems to be made that on Paragraph 16, the first part only refers to vagueness and over breadth with respect to these subsections that are challenging that your people protection challenge is limited to the other sections. Well, one of the favorite quotes for plaintiff's lawyers is probably the Letterman case in the Supreme Court where they actually said, we meant what we said. We said what we meant. Notice pleading. I don't think that you can read this complaint in its entirety and not have the sense that we thought that they were being treated differently in a way that was unfair fundamentally and that violated their constitutional rights. If you go to the actual ordinance in question and you read the powers of the board to publish the results of any investigations, to give such publicity to such results may be deemed of best interest to reach the general public. To number four, to maintain a constant survey of the field of charities, which you would have to read in according to them the word religion. So read it. To maintain a constant survey of the field of religions with regard to the need and the work to be done in order to secure intelligent cooperation among all. Substitute the word religions for charities, all religions in the city so that a comprehensive and economical plan in religion may be attained. I'm substituting the word religion for charity. That's, I think, I hope, unconstitutional. To have a government agency that says that their goal is to investigate these types of people engaged in this type of religion and to recall and declare and void any information card or receipt upon additional information by the department which renders incorrect any statement. This is just, if they tried to do this, if you just flipped this ordinance and instead of saying that all of this applied to churches that solicit on the street, you said that all of this applied to churches that didn't solicit on the street but rather solicited in their own church, I think we'd be out of here in a second. And I did take the liberty recently in preparing for this, I thought it an interesting question, to go to Westlaw and Lexis and look and see how did cases arise about fraud and undue influence and solicitation for religions? And my research using a variety of search words, religion fraud, undue influence, virtually every case involved a typical mainstream church wherein the pastor, minister, priest, rabbi, whatever was accused of having undue influence or defrauding a member who had a lot of money. This type of fundraising on the street, there's not a shred of evidence that's been produced that would justify any sort of strict scrutiny. Strict scrutiny couldn't even come close, I don't think. I mean, they've proven nothing to indicate that this is a particular danger to community in any way, shape, or form over the more traditional larger churches with a big church building. I mean, that's just an assumption that's made. And I know that the standard, if it's just rational basis, is pretty low, but I don't think it even meets that, especially if you actually look at the cases out there that involve enforcement of these types of problems of people getting money that they shouldn't get. The fraud is not happening on the street. It's happening in other places. At least it certainly appears to be based on the cases that get reported. This is a traditional American and worldwide type of religious activity. The other thing I would mention is that our point, which I agree was not perfectly delineated in our brief, is there's some sort of a problem here, because the only way you get charity into, I mean, religion into charity is by using what is number one definition in some older dictionaries. And now back, I see in the new Random House here, is back to being the number one definition again, which is Christian love. The second definition typically is the general understanding of what charity is. If you get Gospel missions into this ordinance by applying Christian love, then you are interpreting it in such a way that requires that you allow discrimination against Christians as compared to non-Christians, because the only way they have notice is because they're engaged in the Christian love practice, and Muslim love wouldn't presumably be covered. How would they have notice? So I don't think that you can go through the definitions and pick out a definition that would result in an obvious violation of constitutional rights and substitute that in, showing that it gives you notice, when I think you need to have one that gives you notice and doesn't violate a right. The district court said that it's clear to the district court that religion is a subset of charitable actions. That is, religion is always under charitable, because that's what religions do. Is the district court wrong in that? And if so, why? I think the district court is very wrong, and I would refer you to the cases involving Scientology, where essentially the argument made against the Scientologists was they weren't really very religious because they kind of were greedy and kept a lot of money and had a whole financial structure that was you pay a certain amount of money that essentially some judges referred back to the sale of indulgences in saying this is a business. And eventually in the appeals court they said, no, you know, that's a wide variety of activity that's regarded to be religious, and it is not – when you read the wide variety of activity, I don't think it incorporates necessarily charitable. I mean, people can have a religion, I think, in the United States that says me first, and some of the televangelists seem to have that in my opinion. I don't think that is a true statement. I don't think there's any evidence in the record or anything judicially noticeable that would support that. Thank you, Counselor. Your time has expired. The case just heard will be submitted. Thank you all for your arguments and coming today. I will be in recess for the afternoon. Thank you.
judges: Goodwin, Wallace, Thomas